## John Warnell v. Matt S. Finch.

The clause of the 10th Section of the General Provisions of the Constitution of the Republic, which declared that if any citizen should die intestate or otherwise, his children or heirs should inherit his estate, and that aliens should have a reasonable time to take possession of and dispose of the same, in a manner thereafter to be pointed out by law, was prospective merely, and did not operate in favor of alien next of kin of those who had previously died or been slain.

The clause of the 10th Section of the General Provisions of the Constitution of the Republic, which declared that "orphan children whose parents were enti-"tled under the Colonization Laws of Mexico, and who now reside in the Re-"public, shall be entitled to all the rights of which their parents were possessed "at the time of their death," did not extend to orphans who did not reside in Texas "at that time."

Where Henry Warnell, whose wife was dead, emigrated to Texas in 1834, from Arkansas, leaving there an only child, an infant, and was slain with Travis in the Alamo, and a certificate was issued by the Board of Land Commissioners in 1838, to "the heirs of Henry Warnell" and a patent thereon was issued in 1841 to "the heirs of Henry Warnell," it was held, in a suit by the child, commenced on the 6th of March, 1855, to recover the land, that although he could not claim the land by descent, on account of his alienage at the time of his father's death, yet that he was entitled to recover under the description of heir, in the certificate and patent, on the ground that the laws which provided for the issuance of certificates and patents to the heirs of those who fell under Fannin, Grant, Travis, Ward and Johnson, by the term heirs meant those persons who stood in such relation to the deceased, that they would be entitled to the inheritance under the general rules of descent and distribution.

Appeal from Bastrop. The suit was commenced on the 6th of March, 1855. The facts appear in the Opinion.

*Turner & Sneed,* for appellant. The question of an alien's capacity to inherit is not presented by the record, and the decision below was clearly erroneous. The petition alleges the title by descent in plaintiff by virtue of a genuine certificate and patent; that the defendant holds forcible and unlawful possession, all of which is admitted by the demurrer.

*Oldham & Terrell,* for appellee. An heir domiciliated out of the Republic of Mexico, could acquire no right by inheritance to lands of persons dying in the Province of Texas. (Yates v. Iams, 10 Tex. R. 168.)

Warnell, the ancestor, was entitled to lands under the Colonization Laws of Mexico; he died before the adoption of the Constitution; the plaintiff who claims as his heir, did not reside in the Republic at the date of the Constitution, and does not yet reside in Texas, and, to our mind, is, by the Constitution, clearly excluded from the right to claim the land in controversy as heir.

LIPSCOMB, J. This suit was brought to recover one-quarter of a league of land in Bastrop county.

The appellant, who was the plaintiff in the Court below, alleges in his petition, that he is a citizen of Johnson county, in the State of Arkansas; that he is the son and only heir at law of Henry Warnell, who fell with Col. Travis at the Alamo, in March, 1836, in the Texas Revolution, as he is informed and believes; that the petitioner's father emigrated to Texas in the year 1834, after the death of petitioner's mother, leaving petitioner an infant only a few months old; that on the 22nd day of January, A. D., 1838, the Board of Land Commissioners of Bastrop county, Republic of Texas, issued a certificate, No. 49, for one-third of a league of land, to "the heirs of the said Henry Warnell; that by virtue of a valid location on the 8th day of February, 1838, of the one-fourth of a league of the said certificate, a patent, No. 217, Vol. 1,

was issued on the 1st day of May, A. D., 1841, by Mirabeau B. Lamar, President of the Republic of Texas, to the heirs of the said Henry Warnell; the petition sets out the field-notes of the said land, as contained in the patent; alleges that he is the only heir of the said Henry, and as such entitled to the land; that the defendant is in possession of the said land, and withholds the possession of the same from him, the petioner, &c., &c.

The defendant filed a general demurrer to the petition, which was sustained by the Court.

The main ground on which the defendant relies for sustaining his demurrer, is, that the petition shows that the plaintiff is an alien and incapable of holding land in Texas, that his ancestor having died before the adoption of the Constitution of the Republic, his claim of heirship does not come within the following provisions of the Constitution, i. e.: "No alien "shall hold land in Texas, except by titles emanating directly "from the Government of this Republic.  But if any citizen "should die intestate or otherwise, his children or heirs shall "inherit his estate, and aliens shall have a reasonable time to "take possession of and dispose of the same, in a manner "hereafter to be pointed out by law." (Section 10, General Provisions.)  It is contended that this provision in favor of alien heirs acts prospectively, and therefore cannot embrace the heirs of those who died before that time.  This construction is believed to be correct.  It is not doubted but the Convention had power to have given a retrospective action, and provided for the heirs of those already dead, but we cannot infer such to have been intended by the terms of the provisions cited, or qualifications to the inhibition to aliens holding land is expressed in the Constitution; nor can the right of the plaintiff be sustained under the subsequent provision of the same Section: "that orphan children "whose parents were entitled to land under the Colonization "Laws of Mexico, and who now reside in the Republic, shall

"be entitled to all the rights of which their parents were pos-
"sessed at the time of their death," because the plaintiff was
not residing in the Republic at that time. It would seem,
then, that if the plaintiff's title can be sustained it must be by
resorting to some other grounds than those already noticed
by us.

There can be no doubt that the certificate, granted by the
Board of Land Commissioners, to the heirs of Henry Warnell,
was valid; it had been granted by the Board authorized to
act upon claims of headrights for land; it had been approved
by the Traveling Board, as we must infer, else it would not
have been patented; and it was finally acted upon by the
Commissioner of the General Land Office, and all confirmed
by the issue of the patent. These different sanctions were
conclusive that the heirs were entitled to the land. (See Styles
v. Gray, 10 Tex. R. 506.) The patent to the heirs is con-
clusive in their favor, in the absence of proof of fraud; and
the only question is the heirship of the plaintiff.

The legislation, governing the Board of Land Commis-
sioners is somewhat obscure; but that there is a distinction
between bounty claims for land and headright claims, is very
clear; and it is manifest that the Boards, from their first or-
ganization, acted upon headright claims of those who had fallen
with Fannin and Travis before the adoption of the Constitu-
tion, issuing the certificates on which patents were after-
wards issued from the General Land Office, to the heirs of
those who had so fallen. On the 24th of May, 1838, a
joint resolution was passed, entitled a joint resolution pro-
viding for issuing certificates of headrights to the heirs of
those who fell with or under Fannin, Travis, Grant and John-
son. It is as follows : "That a certificate from the Secretary
"of War shall be a sufficient evidence to any of the Boards of
"Land Coaumissioners, to grant certificates of headrights to
"the heirs, or legal representatives, of those who fell while un-
"der the command of, or with Fannin, Travis, Grant and

"Johnson, in the spring of 1836." (Hart. Dig. Art. 1895.) There had been, it is probable, some difficulty in making proof required by the Board, from the fact that most of the men so slain were strangers in the country, and so few of those who participated with them, as fellow-soldiers, before the massacre, were left to make the proof required. Here was a direct recognition of the authority of those Boards to act upon and grant headright certificates to the heirs of those who fell. There was again a much later recognition of these headright certificates to the heirs of those who fell at the times and places before mentioned. The Act of February 9th, 1850, is entitled an Act for the relief of the heirs of those who fell with Fannin, Travis, Ward, Grant and Johnson, during the war with Mexico, in the years 1835 and 1836. The 1st Section of this Act directs that the Adjutant General shall make out a list of those who fell with Fannin and Ward, and with Travis in the Alamo, and with Grant and Johnson, and to deliver the same, certified under his seal, to the Commissioner of the General Land Office, who shall file the same among the archives appertaining to his office. The second Section provides that as soon as the Adjutant General has performed what he is required to do in the first Section of the Act, he shall issue to the heirs of those who fell with Fannin, Ward, Travis, Grant and Johnson, their heirs or legal representatives, attorneys or assigns, certificates of headrights, in right of those who were heads of families for one league and labor of land, and in right of those who were single men for one-third of a league of land. The fourth Section provides that this Act shall extend only to the heirs of those who fell as mentioned in the second Section of this Act, and of them, only to those in whose right no certificates for headrights have been issued—thus clearly recognizing the headrights that had previously issued, and had issued to the heirs of those who had fallen, without any limitation or restriction, as to the residence of those heirs. When this legislation is taken in connection with the fact that nearly all of those who had so fallen were volunteers, and not citizens

of the Republic who were entitled to land under the former laws of Texas, and that their heirs were in the country from whence they had come to participate in our struggle for independence, it leaves the inference that foreign heirs were not intended to be excluded, where the ancestor had fallen on the occasions mentioned in the Acts of legislation we have noticed. That it should have been so intended, to make an exception in favor of the heirs of all who had so gallantly thrown themselves in the breach for the protection of the citizens of the country, harmonizes with the gratitude entertained for their services, who although they fell gloriously, under an overwhelming force of the enemy, yet, in their death, had so far destroyed the *morale* of the army of the enemy, that they were more than half vanquished before a second encounter with the arms of Texas.

Is there anything in the Constitution of the Republic repugnant to and forbidding such just and generous rewards from being conferred by the Congress of the Republic? The Constitution, it has been shown, forbids an alien from holding land in Texas, unless the title is derived immediately from the Government. This is the only inhibition; there is nothing to prevent Congress from giving or granting land to an alien, and nothing to prevent an alien from holding land so given or granted to him by the Congress; because, in such case, the title would emanate immediately from the Government. Congress could give it gratuitously, or could sell it to an alien, and the alien could hold the land; as in cases of an assignee of a soldier's certificate for bounty land, the assignee would receive the patent from the Government, and could hold the land. So a foreigner, an alien, could purchase land scrip and hold the land on which it was located, because the patent would emanate directly from the Government. How, then, does the heir hold in the case before us? Not from his ancestor, but he is the immediate grantee of the Government. His ancestor had no right or title to descend to him. The Government grants the land to the alien heir directly, in consideration to

be sure, of the sacrifice of the life of the parent in the service of the country.

It is no answer to these views, that in this case, the parent was entitled, as an emigrant, to land ; because the Act of Congress makes no exception ; it extends to the heirs of all who had so fallen in the service of the country, under the command of the officers therein named. And, although the alien heir could not have claimed the land to which his father would have been entitled to as an emigrant, had he died a natural death, yet, as he fell with Travis, he could receive and hold as his heir. Now, if the law embraced only such of the fallen as had emigrated to the country before the commencement of the war, it would have been perfectly useless legislation ; because those persons were provided for by the Constitution, so far as to resident heirs ; but no provision was made for those who were not so entitled to land under the former laws in force at the date of his emigration. Had the heir of Henry Warnell been living in Texas, he could have taken under the provision of the Constitution ; but, being an alien, he could only hold under the patent issued to the heir, on the ground of the grant being made to the heir of one who had fallen with Travis.

It is not necessary to say what would be the result, had the heir living in Texas taken out the headright, on the right of his father as an emigrant, and he had endeavored to procure an additional headright, as the heir of one who had fallen with Travis. It might be conceded that he could not hold both, and yet it would not be an obstacle to the plaintiff's holding ; because we have no evidence that he does claim more than one headright.

The conclusion to which we have arrived, is, that the alien heir of one who had fallen with either Fannin, Travis, Grant, Ward or Johnson, can hold under a grant of land from the Government directly to the heir. In fine, where the grant from the Government is to the heir, if not in contravention of law, nor obtained through fraud, an alien heir can take and hold under such grant, as well as if he had been a citizen ; not

so if the alien heir claims by descent cast from the father. If the father was the grantee, the alien heir could neither take nor hold land by such title. We are therefore of opinion that the judgment must be reversed and cause remanded.

Reversed and remanded.