REUBEN MIDDLETON, PLAINTIFF IN ERROR, *v.* WILLIAM McGREW.

The alien heirs of a colonist in Texas, who died intestate in 1835, cannot inherit his landed property there. The courts of Texas have so decided, and this court adopts their decisions.

THIS case was brought up by writ of error from the District Court of the United States for the eastern district of Texas.

It was an action of trespass to try title brought by Middleton, a citizen and resident of the State of Missouri, to recover a tract of land in the county of Refugio, in the southern and western margins of the San Antonio and Guadalupe rivers, being the same land which was granted to a certain Joshua Davis, by the proper authorities of the State of Coahuila and Texas, in the colony of Power and Hewetson, and bounded as follows, to wit: on the north by the rivers San Antonio and Guadalupe, on the south by vacant lands, on the east by the league of land granted to P. Hines, and on the west by the league granted to Doña Josefa Galan, widow of ——— Hernandez, deceased, having a front, when reduced to a straight line, on said river, of about eight thousand eight hundred and eighty-seven varas, and running back about fourteen thousand and sixty varas, and containing five and one-fourth leagues.

The amended answer of the defendant, McGrew, said that the plaintiff ought not to have and maintain his action herein, because he says that the said Joshua Davis, in the petition named, under whom the plaintiff claimed, died in the year 1835. That his next of kin and pretended heirs, under whom the plaintiff claims, were, at the date of his death, aliens to the Republic of Mexico, being citizens of the United States of America, residing in the State of Missouri, and thencefor-

ward continued and remained aliens as aforesaid, and aliens from the Republic of Texas, being citizens of the United States, resident in the State of Missouri as aforesaid. And that the said next of kin and pretended heirs did not at any time prior to the annexation of Texas, or ever after, take possession of the land sued for, and did not, prior to said annexation, make sale of the same, but the said land remained, from the time of the death of said Davis, continuously until the present time, in the adverse peaceable possession of this defendant and those under whom he claims, holding and claiming the same adversely to the pretended right and title of the said next of kin, which is the title under which plaintiff claims in this suit, and this he is ready to verify. Wherefore he prays judgment, &c.

After much evidence was given upon the trial, which it is not necessary to recite, the court charged the jury, that if they found by the evidence that Joshua Davis, the grantee under whom the plaintiff claimed, departed this life in the year 1835, having no other kindred than three brothers, citizens and residents of the United States, and aliens to Mexico, such brothers, by reason of alienage, could not take real estate by descent from him in Mexico. To the opinion of the court in thus charging the jury, the said plaintiff excepted. Whereupon, the jury found a verdict for the defendant, and the plaintiff brought the case up to this court.

It was argued by *Mr. Hughes* for the plaintiff in error, and submitted on a printed argument by *Mr. Ballinger* for the defendant.

*Mr. Hughes* laid down the following propositions:

1. That, by the laws of Spain and of the Indies, a foreigner domiciliated in a foreign country, in all times past, at least from the time of Alonso el Sabeo, in the thirteenth century, during whose reign the Siete Partidas was compiled, could take as an heir to a person dying in Spain.

2. That this rule is not limited or changed by reason of anything in the colonization laws of Coahuila and Texas, or in

the judgments of the courts of Texas; whence it follows, that—

3. The plaintiff ought to have recovered in the court below, having derived his right from the brothers and heirs of the grantee, Joshua Davis.

As the arguments of the counsel upon these points, and especially upon the construction of the judgments of the courts of Texas, would be interesting only to the profession in that State, they are omitted.

Mr. Justice CAMPBELL delivered the opinion of the court.

This action was instituted for the recovery of land in the colony of Power and Hewetson, in Texas, in the possession of the defendant, and claimed by the plaintiff through a conveyance by the brothers of Joshua Davis, deceased, a colonist, who died in June, 1835, intestate, and without issue. These brothers were citizens of the United States, and assumed to be the heirs-at-law of the decedent. The only question presented for the examination of this court is, whether the brothers were capable of taking by inheritance real property within the limits of Mexico, or were they disabled by their condition as aliens? The solution of this question must be found in the jurisprudence of Mexico, as it is understood and applied to cases as they have arisen within the State of Texas. If there is found in the decisions of the Supreme Court of that State clear and consistent testimony to the existence of a rule of descent, under such circumstances, the duty of this court will be performed in ascertaining and enforcing that rule in this case.

The defendant has referred the court to a series of decisions as containing such testimony.

The case of Hollomon *v.* Peebles, 1 Texas R., 673, was that of heirs claiming the land of a colonist in the settlement of Austin, who after his location had returned to the United States and died, leaving heirs who were citizens of them. The court intimate, that by the laws of Spain, as adopted in Mexico, these heirs had no heritable blood, and proceed to say: "Whatever may be the true construction of the laws of Spain or of colonization on the subject matter, there can be

no doubt that the capacity of aliens to hold lands in the Republic of Mexico, if it ever existed under the laws of Spain, was extinguished by the decree of the 12th March, 1828." (4 vol. Ordenes y Decretos, p. 155.) The sixth article of this decree is expressed in the following terms, viz: ·

"Foreigners introduced and established in conformity with the regulations now prescribed, or which shall be hereafter prescribed, are under the protection of the laws, and enjoy the civil rights conferred by them upon Mexicans, with the exception of acquiring landed rural property, which, by the existing laws, those not naturalized cannot obtain. * * * This provision covers all acquisitions of real property, whether by purchase or inheritance, and is so understood by the Mexican editor of *Murillos de Testamentos.*"

The case of Yates *v.* Iams, 10 Tex. R., 168, was that of a citizen of the United States claiming through an ancestor who had died in 1827 in Texas, holding land by a head-right acquired in 1824. The court announce their conclusion, "that, upon general principles pervading the law of 1823, under which this grant was made, and upon the general policy of the Government in relation to the right of property in lands (granted for the purpose of colonization) at the time of the death of the intestate, an heir domiciliated out of the Republic of Mexico could acquire no right by inheritance to lands of persons dying in the province of Texas."

The case of Hornsby *v.* Bacon, 20 Texas R., 556, was that of citizens of the United States claiming to share as heirs in real property of a citizen of Texas, who died in 1835, with other relations of the same degree, who were citizens of Texas. The court say: "The right of the plaintiff's vendors (the alien heirs) to claim this land by inheritance must be tested by laws anterior to the Constitution of the Republic; and by them, as appears from our previous decisions, such right can not be sustained. The plaintiff can claim nothing through them by his conveyance."

The case of Blythe *v.* Easterling, 20 Texas R., 565, is that of heirs claiming the landed estate of an immigrant to Texas, who died in November, 1833, they being aliens and non-resi-

dents. The court decide, "that it is too well settled by repeated decisions of this court to be longer regarded as an open question, that at the period of the death of the decedent, his heirs, being aliens, could not inherit his estate."

We understand these decisions to declare a law of descent applicable to the landed property of Texas generally, and not to lands in a particular colony, or settled under a particular act of colonization. The case before the court falls within the control of these decisions.

The judgment of the District Court is affirmed.