J. W. FRANKS v. R. D. HANCOCK.

(Case No. 2752.)

1. CITIZENSHIP — NATURALIZATION.— A colonist who, in 1831, received a grant of land in Texas, and took the oath of allegiance, became a naturalized citizen, with all the rights of property and of person which he could have were he "native here and to the manor born."

2. ALIEN.— The minor daughter of a colonist, though never in Texas, is not an alien, even if living in an alien country, but capable of inheriting from him, and entitled to share with his other children and his widow in the distribution of his estate.

3. DOMICILE — CITIZENSHIP — MINOR.— The citizenship of the father is that of the child so far as the laws of the country of which the father is a citizen is concerned, and the domicile of the minor child is that of the father. He being in Texas, his minor children, no matter where they may be, are citizens of, and have their domicile in, Texas also. At the death of the father, his domicile remains that of the children. Minors cannot change their domicile or acquire another until they become persons *sui juris*.

4. FOREIGN LAW — EVIDENCE.— A foreign law must be proved as a fact, and in the absence of proof the presumption is that it is the same as in Texas.

5. PARTITION.— In a suit for partition every one having an interest in the property must be made parties to the suit; and if all are not made parties, the decree rendered in such proceeding is not binding even on those before the court.

6. PRACTICE — PARTIES — PARTITION.— If, in the course of the trial of a suit for partition, it becomes apparent that there are necessary parties not before the court, the case should be stopped and the parties brought in before rendering a decree. A decree of partition is not binding on the parties to it unless they represent the whole of the estate.

7. LIMITATION — POSSESSION.— The possession of a co-tenant or tenant in common will be presumed to be in right of the common title. The tenant cannot claim the protection of the statute of limitations unless it clearly appear that he repudiates the title of his co-tenant and is holding adversely to it. In such case his acts and declarations will be construed much more strongly against him than when there is no privity of title.

8. LAND — PURCHASER WITH NOTICE.— The purchaser who buys land by metes and bounds from an heir, with knowledge of a division between the heirs and their ancestor's widow, by which the widow received as her community interest a particular half of the survey, has no right, in a partition suit by one of the heirs, to complain because the widow's half is not included in the suit.

9. LIMITATION.—Disabilities cannot be piled one upon another.

APPEAL from Guadalupe. Tried below before the Hon. J. A. Ware.

This suit was instituted on the 25th November, 1871, by Hancock against Franks and others, alleging that he is the owner of an undivided interest of one-fourth of the lower half of the Darst league and two-fifths of one-fourth of the same half league on the Guadalupe river in Gonzales county, and that the defendants are tenants in common with him of said half league, and praying partition of the same.

The plaintiff sets out his title as follows: That Jacob C. Darst, with his wife, Margaret, and two of his children, emigrated to Texas from Missouri in 1831, and obtained a grant from the government as a colonist, for one league of land; that he was killed at the fall of the Alamo on the 6th March, 1836; that he left surviving him his widow and four children, David A. Darst, the son of Jacob and Margaret, and Nancy Darst, who came with him to Texas, and Rosetta Darst, born the 23d February, 1814, and Mary Darst, a

younger child (children of a former marriage), who remained in Missouri. On 22d November, 1838, Rosetta was married in Missouri to Steven Hancock. On the 10th September, 1844, Rosetta died leaving three children, the plaintiff Roswell Hancock, who was born 18th January, 1841, and two other children, who died leaving no issue. Nancy Darst was married in November, 1838, to one Crosby, who disappeared in July, 1840, and has not been heard of; and Nancy was killed by the Indians on 13th August, 1840, and left no children. Nancy Darst conveyed her interest to David.

The widow of Jacob conveyed the upper half of the league as her community interest to David Darst, and David conveyed that half to one French Smith, in 1844, by metes and bounds, "leaving thus the lower half for the children and heirs at law of Jacob Darst."

The plaintiff claimed that he was entitled to one-fourth of the lower half of the league as heir of his mother, Rosetta, and to two-fifths of that fourth which descended to Nancy, and that the defendants own the residue. It was averred that David Darst, in 1853, sold all his interest in the lower half of the league to defendants, J. W. Franks and Susan, his wife, who are now in possession of the land.

The grant is annexed to the petition, and recites that Jacob Darst had a family consisting of his wife and four children, a son and three daughters; that he is a stock raiser. The grant is dated 1st July, 1831.

To this petition the defendants filed a general demurrer, and pleaded "not guilty," and the law of limitations of ten, five and three years, and suggested that they had made valuable improvements, etc.

The cause was submitted to the judge, a jury being waived.

Judgment was rendered for the plaintiff for seven twenty-fourths of the land described in the petition, and for partition, appointing commissioners to divide the land, and directing them to respect the improvements made by Franks and wife and their vendees so far as was practicable, and the costs apportioned according to the interest of the parties,

and that plaintiff recover seven twenty-fourths of the costs of the suit.

From this judgment defendants appealed.

By a bill of exceptions it appears that the defendants' demurrer was overruled and that the court refused to permit proof of the character and value of the defendants' improvements.

Upon the trial the facts as stated in plaintiff's petition were substantially proven. The emigration of Jacob Darst to Texas in 1831 and the grant to him of the league of land. There came with him his wife, Margaret, and their son David, and Nancy Darst, the daughter of Jacob by a former marriage. Two other daughters, Rosetta and Mary, never came to Texas, but remained in Missouri. Nancy, in November, 1839, was married to one Crosby, who left Texas for Illinois in the fall of 1840 and has never been heard of since. By him she had one child, which died 7th August, 1840.

Mrs. Fretwell, whose statement was admitted without objection, states that she was taken prisoner by the Indians on the morning of the 8th August, 1840, when Linnville was sacked. Soon afterwards a woman rode up and accosted her, demanding to know "why she had suffered herself to be taken prisoner." She said her name was Crosby; that she had been taken prisoner the day previous when the Indians attacked Victoria; was only captured because she had a babe to save as well as herself; that she and her babe were placed on horseback; that on riding into Linnville on the morning of the 8th August, 1840, "for want of nourishment, she having none to give it, and because of excessive fatigue, her babe fretted and cried greatly, for which an Indian snatched the babe from her, cast it upon the ground and speared it before her eyes." A few days afterward the dead body of Mrs. Crosby was found with an arrow through the heart. She was killed at the battle of Plum Creek. David Darst gave the ages of the children of Jacob Darst from the family bible. Rosetta was born February 23, 1814. He says, "they (speaking of Rosetta and Mary) refused to

come to Texas with their father through the influence of their relations in Missouri, as *I understood at the time*." There was a division of property between them and their father, leaving them some property and money, amounting to about $1,000, in the care of their uncles for the use of the children and their support. In 1855 David Darst brought his sister Mary to Texas. She remained here two years.

Rosetta Darst was married to Steven Hancock in Missouri on the 22d November, 1838, and died in the fall of 1844. By him she had three children, Mary, Zerilda, and the plaintiff, Roswell D. Hancock, who was born January 18, 1841.

Mary Hancock was married to Patrick Garvin, and died 30th June, 1857, leaving no children; her husband survived her. Zerilda died in 1863, unmarried.

It appears from the testimony of Mrs. Bryan that Rosetta left her father's house about a year after his second marriage, for the reason that she could not get along with her stepmother. She went to her grandfather's (she was then about eight years old) with the consent of her father, who always appeared to exercise a father's control over her. Her sister Mary was taken care of by her uncle, Morgan Bryan.

The agreement of parties forms part of the statement of facts, by which it appears that administration was taken out on the estate of Jacob Darst by his surviving wife; that all the debts were paid, and the estate closed; and that the surviving wife took the upper half of the headright league as her community share; that she conveyed it to her son David, who, 21st March, 1844, conveyed it to French Smith; that afterwards, in 1851, said David sold the lower half of the league to defendants Franks and wife; that in 1855 or 1856, Mary Darst conveyed her interest in the land in this suit for a valuable consideration to David Darst; that defendants had been in possession ever since the date of their title bond, viz., 1st July, 1851.

David Darst says: " He and his mother settled upon it in 1841, and remained till driven off by the Vasquez raid. Some time after he put another man in possession, and after

he left another, who remained till the sale to Franks. The parties held under him, and the occupancy of the league has been about as continuous as the state of the country would permit since 1841." There was no proof of the payment of taxes.

In pursuance of Darst's title bond to Franks, Darst conveyed the land involved in this suit by metes and bounds to James L. Gay, in trust for the use and benefit of Franks' wife. The deed is dated 21st June, 1852.

Jacob Darst, the grantee of the land, fell at the fall of the Alamo on the 6th of March, 1836.

The assignments of error are in substance:

1. That the court erred in overruling the defendants' demurrer.

2. That the court erred in excluding proof offered by defendants of permanent and valuable improvements.

3. That the court erred in giving judgment for the plaintiff in manner and form as the same was rendered.

4. That the court erred in overruling the defendants' motion for a new trial.

5. The judgment is erroneous in this:

1. Plaintiff's ancestors were aliens at the time of the descent cast.

2. The plaintiff and his ancestor's mother were barred by limitation.

3. The mother of plaintiff, never having come to Texas, was never a citizen of Texas, and not entitled to share in the distribution.

4. The plaintiff was not entitled to the interest of the child of the deceased daughter of Jacob Darst, who was killed at Plum Creek, nor of the other daughter.

5. The presumption was that the land in controversy was partitioned and distributed at the time the administration was closed in Gonzales county, and herein plaintiff and ancestor were barred.

6. On the whole testimony plaintiff was not entitled to judgment.

7. The court decreed costs against defendants that had been expressly adjudged against plaintiff.

*John Ireland* and *Miller & Sayers*, for appellant.

*Harwood & Winston*, for appellee.

QUINAN, J.— It is not necessary for the determination of this case that we should consider these assignments in detail.

The important questions presented are, whether Rosetta Darst, the mother of the plaintiff, and under whom he claims, was an alien and incapable by the law of inheriting from her father the land in controversy; whether, if not, her right has been forfeited or lost by lapse of time; whether the plaintiff has made good his title to the land and the quantity for which he recovered judgment, or is barred by the laws of limitation; and whether the judgment of the court, in the disposition of the case as respects improvements, partition and costs, is the judgment which should have been rendered?

Jacob Darst, upon his emigration to Texas, was admitted a colonist of De Witt's colony. He received upon his application (which by the proper authority was adjudged to be true) representing that he was a married man and had four childen, one of whom was of the male sex; that he was of good habits, a laborer, farmer and stock raiser,— a grant of this league of land. The grant recites that he had taken the oath of allegiance to the republic of Mexico and to the state. He thus became a naturalized citizen of the republic of Mexico.

"Domiciliation," says Chief Justice Hemphill, in Yates *v.* Iams, "is in most respects equivalent to naturalization. The domiciliated foreigner is regarded as a subject, and as such he must take the oath of allegiance, renouncing foreign protection or any relation or civil subjection to his own country. His rights can be defined without difficulty. He is in the condition of a native citizen, and is, as a general rule,

entitled to the same rights and to the like charges and obligations."   10 Tex., 170.

The acquisition of land, attaching him to the soil, his reception as a colonist, is conclusive of his domiciliation or its equivalent, naturalization.

Besides, Darst continued until his death to reside in Texas, and fell fighting for the liberties of the land when the Alamo fell on the 6th of March, 1836.

By the constitution of the republic it was declared "that all persons who resided in Texas on the day of the declaration of independence (the 2d of March, 1836) shall be considered citizens of the republic and entitled to all the privileges of such."

At his death, then, Jacob Darst was resident here, and had here his fixed domicile, with unqualified ownership of the land granted to him, and with all the rights of property and of person which he could have were he "native here and to the manor born."

It follows, necessarily, that being himself a citizen resident here, his minor children, no matter where they might be, were citizens and had their domicile here also.

The authorities to sustain this proposition are in the reports and text books very numerous.

The domicile of the minor child is always that of the father.  It is clear, says Judge Wheeler, that the domicile of the parent draws to it that of the children.  Hardy v. De Leon, 5 Tex., 237.  And again in Russell v. Randolph, 11 Tex., 465, referring to Republic v. Young, Dallam, 464, and State v. Skidmore, the same judge says:  "The principle of these cases is, that constructively their families were with them. . . .  If Russell had acquired a residence in Texas *animo manandi*, constructively his wife and children were here too, because his residence by operation of law would also be their residence."  When the domicile of the parent shifts, that of the minor child follows the change.  Wharton's Conf. of Laws, sec. 41; Story, Conflict of Laws, 546.

The domicile of the father or mother, being a widow, is that of the child, and a change by either of those parents

would necessarily operate as a change of the child's domicile. 1 Burge, Com. on Col. and For. Law, 38. At the death of the father his domicile remains that of his infant children. Trammell *v.* Trammell, 20 Tex., 417; Story, Conf. of Laws, sec. 46.

And the general rule is that minors cannot change their domicile. No infant, says Story, J., who has a parent can, in the nature of things, have a separate domicile. The parent's domicile is consequently and unavoidably the domicile of the child. Story on Conf. of Laws, 505; Wheeler *v.* Hollis, 19 Tex., 527; Russell *v.* Randolph, 11 Tex., 465; 13 Ind., 167; 18 Ind., 17.

So it was held in the leading case of Guier *v.* O'Daniel, 1 Am. Leading Cases, 679.

"A minor during pupilage cannot acquire a domicile of his own. His domicile, therefore, follows that of his father, and remains until he acquires another, which he cannot do until he becomes a person *sui juris.*" See, also, 2 Mass., 419; 5 Vesey, Jr., 750.

And in Ludlam *v.* Ludlam, 26 N. Y. Rep., 371, it is said that "this rule applies in regard to citizenship — the citizenship of the father is that of the child so far as the laws of the country of which the father is a citizen are concerned, though the child, from the circumstance of his birth in a country where the father is not a citizen, may acquire rights and be subject to duties in regard to such country which do not attach to the father."

And whether Rosetta Darst was an alien and a minor must be determined by the law of Texas at the time of her father's death.

"Who are to be viewed as aliens, and what restrictions their alienage imposes on them, is from the nature of things exclusively the subject of territorial legislation." Wharton, Conf. of Laws, sec. 123.

And Judge Story says: "That territorial limitations which prohibit aliens from holding lands either by *succession* or purchase take effect according to the *lex situs*, and capacity is thus judged by this law and not by that of the

alien's domicile. There can be no question that, as to realty, capacity is determined by the *lex rei sitæ*." Story, Conf. of Laws, 430, 434; Wharton, Conf. Law, sec. 296.

Rosetta Darst, by the law of Texas in force at the death of her father, being under twenty-five years of age, was a minor; her father's domicile was her domicile in law, and remained so at his death, and our conclusion is, therefore, that she was not an alien; that she was capable of inheriting from him, and entitled to share with his other children and his widow in the distribution of his estate.

But it is insisted by the appellant that Rosetta having refused to remove with her father to Texas, and chosen to remain in Missouri, she retained her domicile in Missouri, and never in fact was otherwise than alien here.

This proposition is sufficiently answered by the authorities cited. At the time of her father's removal she was but sixteen years of age, and even if we admit the statement of David Darst as to what occurred when he was little more than four years old, to be unqualified by time (though the testimony of the other witnesses does not sustain it), and that she refused to come here, yet, being a minor, she was incapable of refusal or choice of domicile, and none the less " by operation of law, when this country became her father's residence it became also her residence."

We have been referred by appellant's counsel to numerous cases in our supreme court upon the subject of alienage, but upon examination it will be found that they but remotely touch the questions involved in this case. They only affirm the general rule that an alien heir, at the time of the descent cast, could not inherit land in Texas. No case has been cited in which it has been held that minor children of citizens were alien here.

In Portis v. Hill, 14 Tex., 81, there was no question that the minor, Cummins, inherited.

In Blythe v. Easterling it did not appear that Baird ever was a citizen of Texas. He purchased the land in 1833, and died the same year. And it was admitted of record that

at the time of his death the plaintiffs were citizens of the United States.

In Yates v. Iams, it does not appear that Ruth Iams, the daughter of John Iams, was a minor.

In Warnell v. Finch, 15 Tex., 166, the question was not considered whether Warnell was domiciliated here or was a citizen of Texas at the time of his death on 6th March, 1836. He had then acquired no land, nor does it appear that he was entitled to claim any under the colonization laws. The land in controversy was a third of a league granted to his heirs by virtue of a certificate issued to them in 1838, which was sustained, and his daughter's right to it held good under the law of 24th May, 1838, providing for the issuing of headrights to the heirs of those who fell with Travis, etc.

Another objection urged to the correctness of this conclusion is that, at the time of the death of her father, Rosetta was over twenty-one years old; that, by the laws of Missouri, where she then was, she was no longer a minor, but of full age and capable of choosing her domicile, and that her legal domicile was in that state.

It would be sufficient answer to this proposition to say that there is no proof of the laws of Missouri in this record, that foreign laws must be proved as facts, and that in the absence of proof we must presume that the law of Missouri was the same as our own. Wharton on Ev., sec. 1292. But we have seen that, as this controversy concerns the realty situated here, the question of Rosetta Darst's right to inherit, whether she were minor or alien, must be determined by our own laws. Indeed, to maintain the contrary doctrine would be to concede to foreign countries the right to prescribe for us the rules which should control the domestic relations and regulate the paternal authority of our own citizens, which should determine for us whom we should regard as aliens to our government, and to whom we should grant the right of inheritance in our own soil. It may be added that laws respecting aliens, in modern times, are more and more being relaxed; that the capacity of such

persons to acquire receives now a much more liberal and favorable construction than in former times. Wharton, 123 *et seq.*

We come now to consider the defense of the laws of limitation. It is very manifest, from the proof, that, until the sale of the land to Franks, there was no possession of the land adverse to the claim of the children of Rosetta Darst in the lower half of the league. There is no act or fact proven from which the deduction could be drawn that Darst, or those who occupied the land for him, held otherwise than for the benefit of David Darst and his co-heirs. Although examined as a witness, he does not attempt to say that his possession of the land was an exclusive possession, or that he held it adversely to the other heirs or children of his father. "The possession of a co-tenant or tenant in common will be presumed to be in right of the common title. He cannot claim the protection of the statute unless it clearly appear that he repudiated the title of his co-tenant and is holding adversely to it, and in such cases the acts and declarations of the parties in possession are to be construed much more strongly against him than when there is no privity of title." Baily *v.* Trammell, 27 Tex., 328; Angell on Lim., 423.

The fact that there was or was not a partition of the league whereby Mrs. Darst "took for her share the upper half of the league," and conveyed that land by metes and bounds to David Darst, raises no presumption that there was any partition as between the heirs of the lower half among them. Indeed, the agreement of the parties, made part of the statement of facts, strongly negatives the idea that any partition of the land was made by the probate court. It says the estate of Jacob Darst was closed, and "that the said surviving wife took the upper half of the headright league as her community share." Had there been any action of the court of probate decreeing a partition of the land, and allotting the lower half of the league to David Darst, to the exclusion of the other children of Darst, it could doubtless have been established, and there would then,

it would seem, have been but small occasion for the purchase by David Darst from his sister Mary at a full price, as late as 1855 or 1856, of all her interest in the land, of which he had been in possession fifteen years continuously and adversely.

The earliest period, then, when the defendants can be considered as holding adversely to the plaintiff, is the time when Darst conveyed to Franks, and he (as it is admitted) took possession under his title bond on 1st July, 1851, but at that time the plaintiff and his sisters, whose shares in his mother's estate he claims, were under the disability of minority. And taking into consideration the time between 28th January, 1861, and 30th March, 1870, during which the statutes of limitation were suspended, there is no ground upon which to insist that the plaintiff's action was barred by the limitation of ten years at the institution of this suit on the 25th November, 1871.

The plea of five years' limitation must also fail. There is no sufficient proof of the payment of the taxes on the land by the defendant. And if the circumstance which, under the statute, renders that plea available, had been fully proven, the minority of the plaintiff would avoid it, at least so far as relates to his share of the estate of his mother in the land, and as to his right to inherit his sister Zerilda's part of her mother's estate.

Has then the plaintiff proved his title to the land and the quantity recovered by him?

At the death of his mother, it follows from what we have said, that she was entitled to one-fourth interest in the land in suit. She was also entitled, as an heir of the whole blood of her sister Nancy, to two-fifths of the one-fourth which Nancy inherited. At the death of Nancy, leaving no children, her husband did not inherit any part of her estate. Act of December 18, 1837.

Of his mother's interest, Roswell Hancock inherited in his own right one-third. He also inherited from his sister Zerilda, who died a minor and unmarried, in 1863, her share of her mother's interest. But he did not inherit the whole of the equal third of his sister Mary in her mother's estate.

The proof is that Mary was married to Pat Garvin; that she died leaving no issue, and that her husband survived her. By the statute of 1848 he, therefore, inherited the one-half her interest in this land derived from her mother, and Roswell and Zerilda the other half; and upon the death of Zerilda, Roswell inherited with her third of her mother's estate in the land, this her fourth part of her sister's estate. Thus, the interest in the half league to which the plaintiff upon his proof was entitled was seven twenty-fourths, and for this interest the judgment of the court was rendered in his favor.

While, therefore, his petition was not obnoxious to the demurrer interposed, the proof shows that he was not entitled to the quantity of land that he claimed in his petition. It set out sufficiently his cause of action. It described fully, if not truly, the nature of his claim to the land for which he sued. It was not necessary that he should allege the several interests of the defendants in the land which they held in common with him; but it devolved upon him to show in this suit, brought for the partition of the land, that the whole interest therein was in himself and the defendants, and this he failed to do. When, then, it appeared in proof that Pat Garvin had an undivided interest in the land as heir of his wife to one-half interest, it was the duty of the court to suspend the trial of the cause and direct that he be made a party.· And as this course was not pursued, the judgment is fatally defective and must be reversed.

The rule, and the reason of the rule, which requires this, are well expressed by Mr. Justice Moore in Ship Channel Co. v. Bruly, 45 Tex., 6: "Where a bill is brought for partition, the plaintiff must not only state his own title, but also the title of the defendants. It must appear that the parties to the suit, among them, are entitled to the whole estate, otherwise no final and binding decree of partition can be made, even as between the parties before the court, for at any time the owner of the other interest may also sue for partition. And in such event the former partition would be of no effect. If not, he would have to take his purpart

from one or more of the several parts into which the estate had been divided, instead of from the entirety. To give any effect to the suit, as against him, would be to change his estate from a tenancy in common with those owning the other interests in a single tract of land, into a like estate with each of the co-tenants, in as many tracts as the lands may have been divided. Evidently this cannot be done by a proceeding to which he is not a party. . . . Though no objection was, or could have been, made to the petition, when, in the course of the trial, it became apparent that there were necessary parties who were not before the court, it should have stopped the case and required them to be brought in before making a decree."

We shall notice briefly the other grounds of objection to the judgment urged by the appellant, as they may be the subject of contention upon another trial.

It is insisted that, if the plaintiff is entitled to anything, it is to an undivided interest in the whole league of land, and that he cannot elect to have his whole interest in the land set apart to him out of this half league sold to Franks. But this position is not tenable. That Mrs. Darst took the upper half of the league for her community share in the land is an admitted fact. Franks purchased from Darst, not an undivided interest in the land, but a tract by specified boundaries, abutting upon the land which he knew, or was bound to know, had been already appropriated as the separate share of Mrs. Darst, recognized and acquiesced in by the heirs of Jacob Darst. The information of these facts lay directly in the line of the derivation of his title. The plaintiff here does not assail that partition, nor can Franks, chargeable with knowledge of it, object to it. If the plaintiff is content with it, it does not concern the defendants. They have no equities which would entitle them to have the interest of the plaintiff in the league taken in whole or in part out of the other half, long in the rightful possession of *bona fide* purchasers, who have paid for it and improved it. Arnold *v.* Cauble, 49 Tex., 527; Willis *v.* Gay, 48 Tex., 463.

A bill of exceptions was taken to the exclusion of proof of the value of defendants' improvements.

The interest claimed by plaintiff was an undivided interest. The decree of the court directed that the improvements of the defendants should be respected by the commissioners in making partition, and the necessity is not apparent for ascertaining in the decree the value of those improvements, which, in the division, may be allotted to the defendants.

Upon the subject of limitation, as possibly upon another trial the defendants may be able to make full proof of the facts required to sustain the prescription of five years, it may not be improper to observe that the general rule is, disabilities cannot be piled one upon another, for thus, as is said by Lord Eldon, "disability might travel through minorities for centuries." Angell on Lim., 242. What portion, if any, of the estate of Mary Garvin fell to plaintiff, or his sister Zerilda, may depend upon the date of her marriage, which is not proven in this record. The statute of five years would begin to run from that time against all persons claiming under her, whether minors or not.

For the error indicated we conclude that the judgment should be reversed and remanded, and so award.

REVERSED AND REMANDED.