## DOUTHIT et al. v. SOUTHERN.

(Court of Civil Appeals of Texas. El Paso. March 13, 1913.)

1. EXECUTORS AND ADMINISTRATORS (§ 388*)—SALE.

Title to a land certificate in the hands of an administrator will not pass by his sale under order of the court, in absence of report of sale, a confirming order, and an administrator's deed.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1573–1582; Dec. Dig. § 388.*]

2. DOMICILE (§ 5*)—DOMICILE OF WIFE.

The doctrine that the domicile of a husband or head of a family is the domicile of the wife was not a part of the laws of the Republic of Texas.

[Ed. Note.—For other cases, see Domicile, Cent. Dig. §§ 24–35; Dec. Dig. § 5.*]

3. ALIENS (§ 9*)—ALIEN HEIR—RIGHT TO INHERIT.

An heir domiciled outside the Republic of Texas could acquire no right to land belonging to one dying therein.

[Ed. Note.—For other cases, see Aliens, Cent. Dig. §§ 21–29; Dec. Dig. § 9.*]

4. TRESPASS TO TRY TITLE (§ 35*)—PLEADING —ISSUES.

Under the plea of "not guilty" in trespass to try title, defendant may interpose the defense of alienage by an heir prohibited from inheriting.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

5. TRESPASS TO TRY TITLE (§ 38*)—EVIDENCE OF ALIENAGE—BURDEN OF PROOF.

In trespass to try title, the burden is on one who asserts alienage by an heir to establish that plea.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. § 53; Dec. Dig. § 38.*]

Appeal from District Court, Harris County; Norman G. Kittrell, Judge.

Action by Jasper L. Douthit and others against G. W. Southern. From a judgment for defendant, plaintiffs appeal. Reversed and remanded for new trial.

Pardue & Harrington, and Lewis Fogle, of Houston, for appellants. Wm. O. Bowers, of Giddings, for appellee.

HARPER, C. J. The plaintiffs, Jasper L. Douthit et al., sued in trespass to try title for one league and labor of land, known as the Francis Jordan league, in Hartley county. The defendant, G. W. Southern, answered by general and special exceptions, plea of not guilty, plea of three, five, and ten years statute of limitation, and disclaimer as to all of said land except 1,111¼ acres, which was set out by metes and bounds in

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

the answer, and also impleaded W. G. Armstrong, defendant's grantor, on his warranty. By agreement, a severance was had as to W. G. Armstrong, and the venue changed to the district court of Harris county. Trial before the court without jury resulted in judgment for defendant for the land in controversy.

The first, second and fourth assignments of error complain of the finding of law and fact filed by the court wherein he concluded that under and by virtue of the proceedings of the probate court of Nacogdoches county the title to the certificate, and consequently to the land, passed to those through and under whom defendant claims, and therefore rendered judgment for the defendant. The paragraphs of the court's findings of fact and conclusions of law complained of are the twelfth paragraph of findings of fact and the second and fourth paragraphs of the conclusions of law, which we quote in full below:

Twelfth paragraph of findings of fact: "The proceedings appear to have been characterized by that looseness and irregularity that so often prevailed in the courts in those days."

Second paragraph of conclusions of law: "While there was an order on the 30th of November, 1849, dismissing the case from the docket, I conclude that the presumption cannot be indulged that that order was set aside, inasmuch as a month later other orders were entered in the case, and the final account of the administration was passed on, and he was ordered discharged."

Fourth paragraph of conclusions of law: "I conclude that under and by virtue of the proceedings of the probate court the title to the certificate, and consequently to the land, passed to those through and under whom defendant claims; therefore judgment is rendered for defendant."

Appellants' propositions are:

First. That no presumption will be indulged against the record.

Second. The absence from the records of the proceedings of the court of any report of or order confirming sale raises the presumption that no such record ever existed.

Third. Records cannot be supplied by presumption, in the absence of a showing that the records have been destroyed or lost, or that they cannot be produced.

The certificate under which title to the land in controversy is deraigned was issued to Francis Jordan, and the heirs of said Jordan are entitled to inherit, unless their rights have been divested by the probate proceedings of Nacogdoches county, or by reason of the fact that they were aliens at the time of the death of said Jordan, and for that reason they could not inherit. Following we cite the entire record of the probate proceedings, as shown by the statement of facts:

Petition of William Y. Lacy for letters of administration upon the estate of Francis Jordan, filed January 6, 1839.

Order granting letters.

Inventory, showing land certificate in the hands of administrator.

A petition for the sale of the certificate.

An order of sale entered May 30, 1849.

An order of appraisement, showing that the certificate was valued at $500.

On November 30, 1849, the court entered the following order: "Ordered by the court that this case be dismissed from this docket at the personal cost of the administrator W. Y. Lacy."

The following instrument found among the papers was introduced in evidence:

"State of Texas, County of Nacogdoches.

"Personally appeared John Jordan, a citizen of Van Zant county and state above, before me, the chief justice and judge of probate, * * * and made oath that to the best of his knowledge and belief that some time in the year 1837 the following named heirs of Francis Jordan, deceased, did assign, transfer, * * * unto Levi Jordan all their right, title, * * * in and to the headright claim of Francis Jordan, by him, the said Levi Jordan, paying all expenses * * * attached to the obtaining of the same and that the said Levi Jordan and his heirs * * * was to exercise all and singular the rights of ownership over same. * * * The heirs as follows: John Jordan, Elizabeth Odom, Francis Jordan, Phely Ann Reid."

Dated November 14, 1849.

Also the following paper:

"Received of W. Y. Lacy, as the administrator of the estate of Francis Jordan, deceased, all and singular the effects belonging to the succession of said estate, I being the sole heir of the said estate by purchase from the heirs of said estate, and I being one of said heirs, and the said administrator is hereby fully discharged as the administrator. 14th day of November, 1849. Levi Jordan. Signature acknowledged in the presence of O. L. Holmes."

Final account of administrator.

December 31, 1849. Order approving final account and discharging administrator and closing proceedings.

In the final account appears this item: "By amount of offsets delivered over to the heirs of said decedent as per voucher No. 1."

It does not appear from the statement of facts that there was any report of sale, nor any order confirming sale, nor any administrator's deed, and no other evidence than above cited that Levi Jordan acquired the rights of any of the heirs.

[1] We find that the court through the administrator, made no sale of the certificate, but that the order approving final account only distributed the funds in the hands of the administrator, and closed the proceedings, and discharged the administrator.

That the writings introduced—i. e., the affidavit of John Jordan—made ten years after the appointment of administrator, and the receipt signed by Levi Jordan, are not proof of sale by the court, in the absence of report of sale and order confirming, and administrator's deed. We therefore conclude that the heirs of Francis Jordan were not divested of their rights to inherit by the probate proceedings.

The next question is: Did the court err in holding that the children of Francis Jordan, under the evidence, were not barred from inheriting because of alienage, at the time of their father's death, under appellee's cross-assignments of error?

Appellee's first assignment of error: "The court erred in paragraph 1 of his conclusions of law, wherein he overrules the defendant's plea of alienage, and holds that Mary Ann Jordan was one of the seven legal heirs of the estate of her father, Francis Jordan, Sr., deceased, because the uncontroverted evidence shows that Mary Ann Jordan was one of the eight surviving children at the time of the death of her said father, and, if an heir, she and her descendants would only be entitled to a one-eighth interest in her father's estate."

This assignment is good, and appellants admit that it is by the following statement in answer to appellee's brief: "The evidence shows that Francis Jordan had nine children at the time of his death, one of whom remained in Illinois, so that appellants can recover only one-eighth interest, instead of one-seventh."

Appellee's second cross-assignment charges that the court erred in paragraph 3 of his finding of fact, wherein he finds that Mary Ann Douthit accompanied her father to Texas as a member of his family when he emigrated from Illinois to Texas in 1833, because the finding is not in conformity with the evidence. Paragraph 3 complained of is as follows: "Whether or not Mary Ann (daughter of Francis Jordan's first marriage) ever came to Texas with her father is a matter of inference, and in the absence of direct proof, while it may be rather a question of law than of fact, I conclude that the presumption should be indulged that she did, inasmuch as she was a member of his family."

[2, 3] Appellee's third assignment of error is to the same effect. In Republic v. Skidmore, 2 Tex. 266, it was held that "the doctrine of the domicile of the husband being that of the wife or of the head of the family was not admitted in the construction of the law of colonization." And in Yates v. Iams, 10 Tex. 168, and Hornsby v. Brown, 20 Tex. 556, it is definitely settled "that an heir domiciled out of the republic could acquire no right to land of persons dying in the province of Texas."

[4, 5] In cases in the form of trespass to try title, under the plea of "not guilty" a defendant may interpose the defense of alienage; but the burden is upon the person asserting it to establish the plea by a preponderance of the evidence, and in the instant case, the evidence being conflicting, the trial court not having determined the question, and there being no presumption as to the status of the parties plaintiff in respect to alienage, this court cannot determine the question.

The cause is therefore reversed, and remanded for a new trial.