**GLOVER et al. v. McFADDIN et al.**

No. 14041.

United States Court of Appeals
Fifth Circuit.

June 5, 1953.

Rehearing Denied July 27, 1953.

E. Garland Brown, Corpus Christi, Tex.,
for appellants.

Walter C. Clemons, Houston, Tex., Will
E. Orgain, James Cartwright, Samuel C.
Lipscomb, Beeman Strong, Geo. A. Weller
and Chas. F. Heidrick, Beaumont, Tex.,
for other appellees.

Earl A. Brown, Dallas, Tex., for appellee Magnolia Petroleum Co.

L. A. Thompson, Tulsa, Okl., Ewell Strong, Beaumont, Tex., for appellee Stanolind Oil Purchasing Co.

Joiner Cartwright, Beaumont, Tex., for appellees Sun Oil Co. and Sun Pipe Line Co.

Archie D. Gray, Manro Oberwetter, Houston, Tex., for appellees Gulf Oil Corp. and Gulf Refining Co.

Before HOLMES, RUSSELL and STRUM, Circuit Judges.

STRUM, Circuit Judge.

Claiming to be the owners of an undivided ⅞ interest in a large acreage of land embracing one of the oldest and most productive oil fields in Texas, plaintiffs below, appellants here, brought this suit to try title to said lands, to secure possession thereof, and for an accounting for oil produced therefrom since the year 1901. Federal jurisdiction rests upon diversity of citizenship. See Glover v. McFaddin, D.C., 99 F.Supp. 385; Id., D.C., 81 F.Supp. 426. The appeal is from a summary judgment below denying the relief sought by plaintiffs.

Appellants assert that the land was originally owned by Pelham Humphries, to whom it was patented on February 14, 1835, by the State of Coahuila, Mexico, where the land was situate. Coahuila was later absorbed into the independent Republic of Texas, which on December 29, 1845, became the State of Texas. See 9 Tex.Jur. 415.

Pelham Humphries died intestate, unmarried, and without issue, on September 2, 1835, when the lands were still under Mexican sovereignty.[1] He was survived by a brother, William Humphries, a sister, Betsie Jane Humphries, and a half brother, Elisha V. Humphries, Jr., all of whom were American citizens, aliens to Mexico, who spent their entire lives in the State of Tennessee, from whence Pelham Humphries had earlier emigrated to Mexico. These brothers and the sister were unaware of Pelham's ownership of the lands, and never claimed an interest therein. Appellants now claim title as collateral heirs of Pelham Humphries through the full brother and sister just mentioned.

It is admitted that appellees, or their predecessors in title, have been in actual physical possession of the land since November 17, 1860; that they fenced it in 1884, sixty-four years before this suit was brought; that they have produced oil on it since January 10, 1901; and have paid all taxes on the land since 1884, appellants having paid no taxes, and never having been in possession.

The Supreme Court of the United States, and the courts of Texas, have repeatedly held that under the Mexican law in force at the death of Pelham Humphries, aliens to Mexico were ineligible to take real property by inheritance, and that where there were no heirs capable of taking, the property escheated to the Republic of Mexico upon the death of the owner.[2]

In Middleton v. McGrew, 23 How. 45, 64 U.S. 45, 16 L.Ed. 403, it was held that the brothers of an intestate who died in Mexico in June, 1835, the brothers being citizens of the United States and aliens to Mexico, were precluded by such alienage from taking by inheritance lands in Mexico owned by the deceased brother.

And in Webb's Heirs v. Kirby Lumber Co., 48 Tex.Civ.App. 543, 107 S.W. 581, 582, where, as here, the plaintiffs were claiming title to Mexican lands through the heirs of an owner who died in 1835, the surviving heirs being citizens of the United

---

1. The independent Republic of Texas did not assume sovereignty until November 7, 1835. 13 Tex.Jur. p. 587, note 4.

2. A Mexican decree, having the force of law, entered on March 12, 1828, Art. 6, provided: "Foreigners introduced and established in conformity with the regulations now prescribed, or which shall be hereafter prescribed, are under the protection of the laws, and enjoy the civil rights conferred by them upon Mexicans, with the exception of acquiring landed rural property, which, by the existing laws, those not naturalized cannot obtain. * * *. This provision covers all acquisitions of real property, whether by purchase or inheritance, * * *."

States, and alien to Mexico, that court said: "Under the laws of the Republic of Mexico in force at the date of the death of William Webb [the deceased ancestor in that case], his heirs, who were aliens to said republic [of Mexico], took no title to the lands theretofore granted him by the state of Coahuila and Texas. No title having passed to said heirs on the death of William Webb, none was transmitted through them to appellants." That is precisely the case here. As the brothers and sister of Pelham Humphries were all citizens of the United States, and alien to Mexico, they took no interest in these lands by inheritance at his death. Holliman's Heirs v. Peebles, 1 Tex. 673; Yates v. Iams, 10 Tex. 168; Hornsby v. Bacon, 20 Tex. 556; Blythe v. Easterling, 20 Tex. 565; Douthit v. Southern, Tex.Civ.App., 155 S.W. 315.

■ Here, also, as in Webb's Heirs v. Kirby Lumber Co., supra, appellants contend that by the Constitution of the Republic of Texas adopted March 16, 1836,[3] and the Republic's legislative Act of 1840, Laws of 1840, p. 90,[4] the existing inhibition against the inheritance of Mexican lands by aliens to that Republic, was removed, and that title to the lands here involved became vested in the heirs through whom appellants claim. But the inhibition was in effect at Pelham Humphries' death and remained so for some time thereafter. It has been uniformly held by the Texas courts that the constitutional and statutory provisions just mentioned are *prospective* in operation, having no retroactive effect, and are inapplicable to cases in which, as here, the descent was cast prior to the independence of the Republic of Texas and the adoption of its Constitution on March 16, 1836. Webb's Heirs v. Kirby Lumber Co., supra; Hornsby v. Bacon, 20 Tex. 556; Blythe v. Easterling, 20 Tex. 565; Warnell v. Finch, 15 Tex. 163.

■■ Appellants also contend that appellees acquired by purchase an undivided ⅔ interest in the property from the heirs of Elisha V. Humphries, Jr., Pelham's half brother, thereby becoming tenants in common with appellants claiming through a common source, Pelham Humphries, so that appellees are estopped to dispute appellants' title. But under the Mexican laws of intestacy in force at Pelham's death, kindred of the whole blood took to the exclusion of kindred of the half blood.[5] Wardlow v. Miller, 69 Tex. 395, 398, 6 S.W. 292; Franklin v. Piper, 5 Tex.Civ. App. 253, 23 S.W. 942. But for the impediment of alienage, Pelham Humphries' full brother and sister would have taken the whole title, to the exclusion of the half brother, Elisha V. Humphries, Jr. For this reason, as well as by reason of alienage, Elisha V. Humphries, Jr., took nothing at Pelham's death, and his heirs can transmit nothing, so that no interest could be acquired through the conveyances just mentioned. Consequently, appellees are not tenants in common with appellants, and are not, on that account, estopped to deny appellants' title. Compare Word v. Houston Oil Co., Tex.Civ.App., 144 S.W. 334.

■ Appellants undertake to impugn the source of appellees' title, but it will avail nothing to go into those matters, as a plaintiff in a suit to try title must recover, if at all, upon the strength of his own title, not upon the weakness of his adversary's.

The admissions and stipulations of the parties, and the affidavits submitted, left no substantial issue of fact to be tried. Under the facts as they thus appear, the district judge properly granted summary judgment for appellees, defendants below.

Affirmed.

---

3. See 9 Tex.Jur. p. 414.

4. These enactments are the antecedents of Art. 2583, Vernon's Ann. Civ.Stats. of Texas, which provides: "In taking title to land by descent, it shall be no bar to a party that any ancestor through whom he derives his descent from the intestate, is or has been an alien."

5. The Texas law was changed in this respect, March 18, 1848.